IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| JERILYN DUGGINS,<br><br>Plaintiff,<br><br>v.<br><br>FACTORY CONNECTION, LLC,<br><br>Defendant. | 2:25-CV-027-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Findings, Conclusions, and Recommendation ("FCR") of the United States Magistrate Judge to deny Defendant Factory Connection LLC's ("Factory Connection") Motion for Summary Judgment. ECF No. 51. An Objection, a Response, and a Reply to the FCR have been filed. ECF Nos. 53, 54, 57. After making an independent review of the pleadings, files, and records in this case, the Court concludes that the FCR (ECF No. 51) is incorrect. Accordingly, the Court **REJECTS** the FCR.

For the reasons below, Factory Connection's Motion for Summary Judgment (ECF No. 33) is **GRANTED** and this case is **DISMISSED with prejudice.**

**BACKGROUND**

In September 2023, Factory Connection hired Plaintiff Jerilyn Duggins as its Store Manager in Childress, Texas. ECF No. 34 at 4. Duggins was diagnosed with epilepsy in 2018, and informed Factory Connection of her disability during her job interview. ECF No. 34 at 4; ECF No. 40 at 192–93. District Manager David Higgins supervised Duggins, who in turn supervised Assistant Manager, Joylet Antillon-Garcia. ECF No. 34 at 4.

On November 9, 2023, Duggins had a seizure in the store. ECF No. 40 at 225. Duggins texted Higgins and requested to leave her shift early to visit the hospital. *Id.* at 224–26. She

later spoke to Higgins about needing to "sit down" as an accommodation during the following workday. *Id.* at 230–31. Higgins testified that he discussed the request with Factory Connection's Human Resource Manager, Sarah Stanford—though Stanford denied she was ever consulted. *Id.* at 19–20; 382–83. Higgins granted the request and told Duggins to "be safe." *Id.* at 232–33. Duggins testified this was the only accommodation she requested. *Id.* at 233.

During the course of their employment, disagreements arose between Duggins and Antillon-Garcia. Both communicated complaints about the other to Higgins. Antillon-Garcia criticized Duggins's work and management style, ECF No. 35 at 17, while Duggins criticized Antillon-Garcia's disobedience. ECF No. 40 at 219. On December 28, 2023, Higgins visited the store to settle the various complaints. *Id.* at 20. Antillon-Garcia knew that Higgins would be visiting the store that day, but Duggins did not. *Id.* at 23–24, 257–58. Higgins testified that he told Antillon-Garcia about the visit because she was not scheduled to work that day. *Id.* at 24.

When Higgins arrived at the store, Duggins was already at work. *Id.* at 258. The two had a conversation in the main, customer-accessible area of the store. *Id.* at 261. Antillon-Garcia arrived shortly afterwards. *Id.* The conversation became heated and eventually moved to a "back room" where only Duggins, Higgins, and Antillon-Garcia were present. *Id.* at 29, 262.

There are three major disputed differences regarding what was discussed during the conversation. The first concerns employees "vaping" in the store with electronic cigarettes. Duggins testified she and her employees, including Antillon-Garcia, would vape while inside the store. *Id.* at 250-56. But, when a customer complained, she testified that she stopped and told the rest of her employees to stop as well. *Id.* According to Duggins, Antillon-Garcia

continued vaping inside the store after the conversation. *Id.* at 252. Duggins testified that she had multiple conversations with both Antillon-Garcia and Higgins about the issue. *Id.* This caused Higgins to say "he would directly communicate to [Antillon-Garcia] about it." *Id.* at 254. While Duggins testified that vaping was not specifically discussed on December 28, *id.* at 253, both Higgins and Antillon-Garcia testified otherwise. *Id.* at 26, 434. Antillon-Garcia said she was vaping in the store when Higgins arrived and confronted her about it. *Id.* at 434. Higgins testified that he had not heard about the issue until the conversation at the store and that it was a major disciplinary concern. Id. at 49–50, 54–55, 86.

The second major difference concerns the conversation that followed immediately when Duggins, Higgins, and Antillon-Garcia moved to the backroom. Duggins testified she became increasingly anxious and requested—but was not given—a break from the conversation multiple times. *Id.* at 266–67. Higgins, however, directly contradicted Duggins testimony. He testified Duggins never asked for a break, that he proposed the break himself, then the conversation "settle[d] down for a minute." *Id.* at 27–28, 30–31.

The third major difference concerns how the conversation ended. Duggins testified that, as the conversation progressed in the back room, she started to experience the beginning stages of a seizure. *Id.* at 267. The last thing Duggins says she remembers is Antillon-Garcia declaring that she was going to quit and turning over her key to the store. *Id.* at 268. Antillon-Garcia testified, by contrast, that Duggins "quit and walked out the back door." *Id.* at 435. She then "told David [Higgins] that I was done, I was tired, and I walked out the front door and lit a cigarette." *Id.* She denied quitting or even discussing the topic. *Id.* at 439. Higgins testified that Duggins announced, "I quit," and left the store completely. *Id* at 28. His testimony is ambiguous as to whether Antillon-Garcia declared that she would quit but, in a March 7, 2024 statement, he wrote that "she decided not to quit" after Higgins "got [her] to

settle down." *Id.* at 28, 31–32, 39, 125–26. After leaving the store, Duggins walked to the nearby Cricket Wireless Store where she had a seizure. *Id.* at 29.

Later that day, at 2:41 p.m., Duggins texted Higgins, "I'm in er don't know how I got here[.]" ECF No. 35 at 16; ECF No. 40 at 129. Higgins responded, "You left the store and the ambulance took you from Cricket need you to call me when you are up to it[.]" ECF No. 35 at 16. Duggins responded that she was sorry. Higgins replied, "Me too we will talk soon your keys are in the drawer Jo [Antillon-Garcia] is going to close and possibly open if needed[.]" *Id.* Higgins and Duggins each clarified in their depositions that the keys in question were to Duggins's home and vehicle. ECF No. 40 at 48, 275–76. Duggins testified that she turned in her key to the store at the same time she retrieved her personal keys. *Id.* at 275–77.

At 3:46 p.m., Duggins texted Higgins saying, "I am home I will open in morning I would have told Jo [Antillon-Garcia] but she was talking on phone." ECF No. 35 at 16. Higgins did not respond. At 4:11 p.m., Higgins emailed Stanford and Talley, asking Stanford, "Can you call me regarding an issue in Childress where the store manager quit and walked out and then came back and said she didn't remember quitting." ECF No. 40 at 127. At 5:08 p.m., Duggins again texted Higgins saying, "I never gave a resignation this won't hold up," and "I will be filing a suit and [J]oylet [Antillon-Garcia] quit too. That will be in there[.]" ECF No. 35 at 16. Duggins testified "after I had sent him that text message, I had called him . . . and that is when he told to come in, give me [] the key, and that I was fired." *Id.* at 275. Higgins denies telling her that she was terminated. *Id.* at 48–49.

Factory Connection alleges that Duggins voluntarily resigned her employment. ECF No. 34 at 5–7. Duggins maintains that she never voluntarily resigned but that Higgins terminated her employment against her will because of her epilepsy. ECF No. 39 at 9–12.

**LEGAL STANDARD**

"Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2). For timely objections, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). However, for objections that are not filed within the fourteen-day period, the Court reviews the Magistrate Judge's findings and recommendations only for plain error. *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).

**ANALYSIS**

The Magistrate Judge filed her FCR on June 29, 2026. ECF No. 51. Factory Connection filed their Objection on July 13, 2026. ECF No. 53. Duggins filed her reply on July 27, 2026. ECF No. 54. Because Factory Connection's Objection was timely, this Court reviews de novo any part of the Magistrate's disposition "that has been *properly* objected to." FED. R. CIV. P. 72(b)(3) (emphasis added).

**I. Discrimination under the Americans with Disabilities Act**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When a plaintiff does not present direct evidence of discrimination, the court applies what is known as the *McDonnell Douglas* Framework. *Way v. City of Missouri City*, 133 F.4th 509, 517 (5th Cir. 2025). This framework proceeds in three stages: First, the plaintiff must establish a *prima facie* case of discrimination, creating a presumption that the Defendant unlawfully discriminated against them; second, if the plaintiff establishes a *prima facie* case, the burden

shifts to the employer to show there exists a legitimate, non-discriminatory reason for the adverse employment action; third, if the defendant meets its production burden, the plaintiff must show that the legitimate reasons proffered by the defendant were not its true reasons, but were a pretext for discrimination. *See Mesa v. Verizon Bus. Network Servs, Inc.*, 2012 WL 3452696, at *2 (N.D. Tex. Aug. 14, 2012). *See also Way*, 133 F.4th at 517 n.9.

When establishing a *prima facie* case of discrimination under the ADA, a plaintiff must establish (1) she is disabled withing the meaning of the ADA; (2) she was qualified for the job; and (3) she suffered an adverse employment action on account of her disability. *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 526 (5th Cir. 2022). The parties do not dispute that Duggins, diagnosed with epilepsy, is disabled within the meaning of the ADA nor do they dispute that she was qualified for the job. ECF No. 39 at 14. Thus, this dispute concerns only the third element: Whether Duggins suffered an adverse employment action on account of her disability. The Court finds that a reasonable jury could not find that Duggins was fired on account of her disability. Therefore, Duggins fails to establish a *prima facie* case for discrimination.

*a. Plaintiff fails to present evidence demonstrating an adverse employment action.*

For a plaintiff to establish a *prima facie* case of discrimination under the ADA, she "must establish that [she] suffered an 'adverse employment action.'" *Martin v. Lennox Intern. Inc.*, 342 F. App'x 15, 18 (5th Cir. 2009). Duggins and Factory Connection spend most of their briefing on the question of whether such an action even occurred: Duggins claims she was fired by Higgins while Higgins says she quit before walking out of the Factory Connection store and having a seizure at Cricket.

At summary judgment, the plaintiff must show *some* evidence that a reasonable jury could find in favor of the plaintiff's facts. The Fifth Circuit has held that "[w]here the non-

moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist, and summary judgment should be entered against that party." *Goode v. Greenstream, Int'l L.L.C.*, 751 F. App'x. 518, 521 (5th Cir. 2018) (cleaned up). Duggins has provided no evidence demonstrating that she was not terminated during the meeting in the back room. All the other witnesses—Higgins and Antillon-Garcia—who were in the back room testify that Duggins resigned. And Duggins herself concedes that she does not remember the full conversation and is unsure what happened because she was in the early stages of a seizure. ECF No. 39 at 8; ECF No. 40 at 270. Nonetheless, Duggins insists that she is certain that she did not quit. She does so not on the basis of her *memory*, but on the basis of her understanding of what she *would* do in such a situation. ECF No. 40 at 268–69.[1] It is unclear how Duggins can be certain of something she admits she lacks memory of. After all, certainty about what one *would* have done is not the same as certainty about what one *actually* did. The former is a hypothetical inference about what one believes is their likely conduct in a particular situation and not what one *knows* to be true. At summary judgment, such speculative inferences do not suffice to create a genuine dispute of material fact. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculations, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.") (citation omitted).

---

[1] When asked in her deposition how she can be certain that she did not resign at the meeting, Duggins replied:

> Because I really loved that job. By that point, I had been in it, and I loved that job. I wanted to make sure that that store was succeeding and I would stay in Childress for a long time. And I had even been talking to David about what we can do to improve it, bring more customers in. And I just wanted to work there. I really loved that job.

ECF No. 40 at 268–69.

In response, Duggins cites a case in the Western District of Texas, *Hernandez v. Wal-Mart Stores Tex., LLC*, No. 16-CV-00353, 2017 WL 9291961, at *5 (W.D. Tex. Aug. 1, 2017), which she argues "confirms that testimony given before a lapse in memory is competent summary judgment evidence." ECF No. 39 at 15. However, the evidence Duggins lacks is not what happened *before* her memory lapse, but, what happened *during* her memory lapse. As *Hernandez* says explicitly, "[a] lack of memory about a material fact is not competent summary-judgment evidence," 2017 WL 9291961, at *5. Duggins also suggests the termination happened not at the meeting but rather "following the seizure" during a phone call with Higgins when her memory returned. ECF No. 39 at 14. This does not change the analysis because the question remains what occurred at the meeting: *Did she quit or did she not quit*? And Duggins concedes that she does "not remember anything that happened during that conversation." ECF No. 40 at 270.[2] The Fifth Circuit is clear: "[l]ack of memory by itself is insufficient to create a genuine dispute of fact." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015).

Nonetheless, Duggins argues that she has produced evidence from which a reasonable jury could find that she was fired. ECF No. 39 at 14 –20. For example, Duggins argues her texts show she believed she would be returning to work the next day. ECF No. 39 at 15. The Court is not convinced that a reasonable jury can use such a proposition to deduce a conclusion that Duggins was *actually* fired. It may be true that Duggins sincerely believed that she did not quit—but a belief that it happened without memory of the underlying conversation is mere speculation insufficient to survive a motion for summary judgment. *See*

---

[2] In other parts of Duggins's testimony, she suggests she does remember some parts of the meeting, explaining she was "kind of in and out of it" and that "[t]he next thing I remember was Jolyet quitting, physically taking her key off of the ring and handing it to David. And that's the last thing I remember." ECF No. 40 at 267. In her Response to the Defendant's Motion for Summary Judgment, Duggins says she "cannot recall portions" of the meeting. ECF No. 39 at 14. Regardless, it is clear based on all the testimony and briefing that Duggins does not have memory of the full meeting.

*Moon v. Olivarez*, 26 F. 4th 220, 226 (5th Cir. 2022).

The Magistrate Judge highlights evidence that she believes suggests "even Higgins did not believe [Duggins's] employment was finally ended" including a text message from Higgins to Duggins after the incident explaining that Antilllon-Garcia was "going to close and possible open if needed," and an email Higgins sent to his boss, Kristi Taley and Sarah Stanford at HR that sought guidance "regarding an issue in Childress where the store manager quit and walked out and then came back and said she didn't remember quitting." ECF 40 at 127. The Court is unpersuaded that these messages can lead a reasonable jury to conclude that Duggins had been fired. First, the message to Duggins regarding Antillon-Garcia opening and closing the store is consistent both in a world where Duggins had been fired and a world where she had quit. The statement alone does not lend any support for either conclusion. Second, the message from Higgins to Taley and Stanford is not at all indicative of Higgins believing Duggins had been fired. The message clearly states that Duggins, the store manager, *quit*.

As a last resort, Duggins contends that even if she did resign, under Fifth Circuit precedent, the Court should nonetheless find an adverse employment action. ECF No. 39 at 17. An adverse employment action, she says, includes "any discrimination 'with respect to hiring, firing, compensation, or the terms, condition, or privileges of employment,' so long as it imposes 'more than a de minimis harm.'" ECF No. 39 at 17 (citing *Hamilton v. Dallas County*, 79 F.4th 494, 500 (5th Cir. 2023)). Resigning in the midst of a medical episode, she argues, meets this threshold. The Court disagrees. First, Duggins does not plead that Higgins was antagonistic, and the record provides no evidence of such. For example, the evidence does not show that Higgins raised his voice, fought, behaved aggressively, ridiculed, or in any way threatened Duggins during the conversation. *See* ECF No. 40 at 264–68. True, Duggins claims she asked for a break and Higgins refused—but the Court finds that such a decision

by Higgins is insufficient to characterize the meeting as antagonistic. Second, a single unpleasant conversation, standing alone, does not impose greater than *de minimis* harm. The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).[3] "Allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation. Rather, there must be discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022). Simply put, "not everything that makes an employee unhappy is an actionable adverse action." *Telkamp v. Stein*, No. Civ.A. 300CV0340, 2002 WL 324288, at *8 (N.D. Tex. Feb. 27, 2002) (citation omitted); *see also Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *Wagner v. Campbell*, 779 F.3d 761, 766–67 (8th Cir. 2015).

The Court agrees with Factory Connection that the burden of proving an adverse employment action lies with Duggins and not with Factory Connection. *See Burns v. Nielsen*, 506 F. Supp. 3d 448, 469 (W.D. Tex. 2020) ("The plaintiff bears the ultimate burden of persuading the trier of fact[.]"). Thus, Duggins must present *some* evidence that she didn't quit. But there is none. While the documentary evidence marshalled by Factory Connection[4] is not sufficient to conclude Plaintiff definitely resigned, Factory Connection's deficiency does not by itself create a genuine dispute of material fact. Duggins must produce evidence from

---

[3] The Fifth Circuit has held that the definition of "adverse employment action" within the context of Title VII "applies to the similarly worded provisions of the ADA." *Stringer v. North Bolivar Consolidated Sch. Dist.*, 727 F. App'x. 793, 799 n.3 (5th Cir. 2018) (cleaned up).

[4] This evidence includes the payroll status change form (ECF No. 35 at 4) and Antillon-Garcia's written statement (ECF No. 35 at 9).

which a reasonable jury could find that she has met her burden to survive a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For the above reasons, the Court rules a reasonable jury could not find the existence of an adverse employment action.

*b. Even if there was an adverse employment action, there is no evidence that Duggins's disability was a motivating factor.*

Assuming *arguendo* that Duggins suffered an adverse employment action, Duggins fails to establish that she was fired *on account of* her disability. The Fifth Circuit holds that "[t]he proper causation standard under the ADA is a motivating factor test." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (internal marks omitted). In *Pinkerton*, the Court held that this requires a but-for test, assessing whether "the prohibited motivation for the adverse employment action makes the difference in the employer's decision, *i.e.*, *when it is a 'but-for' cause*." *Id.* at 519 n.33 (internal marks omitted) (emphasis added).[5] In the context of retaliation cases, however, the Fifth Circuit holds that "applying the 'but-for' standard at the *prima facie* step 'would effectively eliminate the need to use the *McDonnell Douglas* burden shifting framework' at all." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019); *see also Crawford v. West Texas A&M Univ.*, No. 25-10887, slip op. at *4 (5th Cir. Sep. 18,

[5] Most other Circuits agree that the ADA's language following its amendment in 2008—"on the basis of"—invokes but-for causation. *See Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019) ("We find no reason to hold there is any meaningful difference between 'on the basis of,' 'because of,' or 'based on,' which would require courts to use a causation standard other than 'but-for.'"); *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016) ("We see no 'meaningful textual difference' between ['on the basis of'] and the terms 'because of,' by reason of,' or 'based on.'"); *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315, 321 (6th Cir. 2012) (en banc) (recognizing the 2008 amendments to the ADA and holding that the ADA requires but-for cause); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("Like the ADEA, the ADA renders employers liable for employment decisions made 'because of' a person's disability, and Gross construes 'because of' to require a showing of but-for causation."); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 & n.6 (9th Cir. 2019) ("We find no meaningful textual difference in the two phrases with respect to causation."); *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024) ("We agree with out sister circuits and hold that the switch from 'because of' to 'on the basis of' in the 2008 amendment to the ADA did not change or affect its but-for causation standard.").

2026). Whatever the exact standard, it is clear that "discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton*, 529 F.3d at 519.

The Court sees no nexus between Duggins's epilepsy and the alleged firing. Just because the alleged termination happened after the seizure does not mean that Duggins's epilepsy was a "motivating factor" in Duggins's termination. No facts suggest epilepsy had any role whatsoever in the termination. Quite the opposite. The evidence shows that Duggins was provided with support throughout the course of her employment at Factory Connection as she was provided all necessary accommodations to work effectively. ECF No. 40 at 204. In Duggins's own deposition testimony, she explains that when she informed Factory Connection of her disability during her interview, they hired her anyways and explained that the epilepsy "was no problem." ECF No. 40 at 203. Following the November 2023 seizure, Duggins received the only accommodation she requested: "sitting down" more often for a day following the seizure. ECF No. 40 at 230–33. And during that time, Higgins texted Duggins telling her to "[b]e safe" and called her "just to ask [Duggins] what [she] needed." ECF No. 40 at 232–33. Given Factory Connection's history of caring for Duggins's disability throughout her employment, the Court finds that a reasonable jury could not find she was terminated because of epilepsy. While Duggins claims that Higgins did not provide her the requested "breaks," Higgins had no reason to believe that Duggins was in the early stages of a seizure and thus could not possibly have refused such requests on the basis of her disability. ECF No. 40 at 266.

Duggins argues that a reasonable jury could infer that her disability was a motivating factor in the decision to not "reinstate" her, citing four factual bases: (1) Duggins's timely denial that she resigned; (2) Higgins's shifting and internally inconsistent accounts; (3) the

lack of documented performance issues; and (4) Factory Connection's permission to allow non-disabled employee, Antillon-Garcia, to rescind her own resignation after she allegedly quit but refusal to accept Duggins's attempt to rescind.[6]

The Court rejects this argument and the four alleged facts. First, none of Duggins's factual assertions are relevant to "motivating factor" analysis. Second, for the comparator argument to be true, the comparator, Antillon-Garcia, must be "similarly situated" to Duggins. *Lavigne v. Cajun Deep Founds., L.L.C.*, 654 F. App'x 640, 645–46 (5th Cir. 2016). But Antillon-Garcia and Duggins were not similarly situated. Higgins permitted Antillon-Garcia to rescind only after she remained on site and remediated her issues. By contrast, Duggins exited the store and walked to Cricket before Higgins even had an opportunity to see whether reconciliation was possible. Because the alleged employment actions were not taken under "nearly identical circumstances," *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2016); *see also Lavigne*, 654 F. App'x at 645–46, the Court finds Duggins has failed to show she was treated less favorably than Antillon-Garcia.

Even if there was an adverse employment action, Duggins fails to show Duggins's disability was a "motivating factor" causing such action. Thus, the Court **GRANTS** summary judgment as to the discrimination claim.

### II. Retaliation under the Americans with Disabilities Act

Next, Duggins pleads unlawful retaliation under the ADA. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge,

---

[6] The Fifth Circuit has sometimes listed the standard for proving a *prima facie* ADA discrimination case as also requiring a showing that "he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Narayanan v. Midwestern State Univ.*, No. 22-11140, 2023 WL 6621676, at *4 (5th Cir. 2023). Duggins's comparator argument is responsive to this element. The Court here chooses to consider it under the third ADA *prima facie* element articulated under *Gosby*. 30 F.4th at 526.

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Similar to discrimination claims, a plaintiff alleging retaliation may prevail by showing either direct or indirect evidence. When a plaintiff, as Duggins attempts to do here, presents indirect evidence, courts again apply the *McDonnell Douglas* framework. *See Eubanks v. Endeavor Energy Res., L.P.*, No. 22-50737, 2023 WL 2612615, at *1–2 (5th Cir. 2023). First, the plaintiff is required to establish a *prima facie* case. Second, the employer "must come forward with a legitimate, nondiscriminatory reason for its action." *Id.* And third, "[i]f employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation." *Id.*

Establishing a *prima facie* case in an ADA retaliation case, however, is different than a discrimination case. To establish a *prima facie* case for retaliation, the plaintiff must show that: (1) she engaged in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). The Court finds that Duggins failed to establish a *prima facie* case and will assess each element below.

*1. Protected Activity*

First, Duggins must establish that she engaged in activity that is protected from retaliation under the ADA. Examples of protected activity include requesting a reasonable accommodation under the ADA, "oppos[ing] any practice of discrimination," or "mak[ing] a charge of discrimination." *Way*, 133 F.4th at 522. Duggins argues that she engaged in three protected activities when she: (1) disclosed her disability at the time she was hired; (2) requested a reasonable accommodation after her seizure in November 2023; and (3) requested

a reasonable accommodation when she asked for "breaks" during the December 28 meeting. ECF No. 39 at 25–27. The Court finds that only the second activity is protected.

With respect to the disclosure of epilepsy at the time of hiring, unless made as part of an accommodation request, Section 12203 of the ADA does not expressly protect the voluntary disclosure of a disability to an employer or others unless the disclosure itself "oppos[es] any act or practice made unlawful by [the ADA]." *See St. John v. Sirius Sols., LLLP*, 299 F. App'x. 308, 309 (5th Cir. 2008).[7]

With respect to the request for accommodation after her seizure in November 2023, the Court finds that this constitutes protected activity. The Fifth Circuit has held squarely that "[i]t is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Tabatchnik v. Continental Airlines,* 262 F. App'x 674, 676 (5th Cir. 2008); *see also Way,* 133 F.4th at 522. And the ADA itself states a requirement of "making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(A).

The Court must decide if it can consider Duggins's third alleged protected activity—which was raised only for the first time in Duggins's summary judgment response. *See generally* ECF No. 1. At the causation stage of the *prima facie* analysis under the *McDonnell Douglas* framework, the Court must determine whether there is a connection between the protected activity and the adverse employment action.

There are two alternative strains of Fifth Circuit jurisprudence on the appropriate course when a matter is raised *for the first time* in response to a summary judgment motion.

[7] Duggins's citation of *Way* does not support a contrary reading. *Way* stands for the proposition that accommodation requests are protected activities, not voluntary disclosures of disabilities.133 F.4th at 522.

*Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021). The first requires courts to construe the filing as a motion for leave to amend the pleadings. *Sherman v. Hallbauer*, 455 F.2d 1236, 1243 (5th Cir. 1972). The second declares that arguments raised for the first time in response to summary judgment are not properly before the court. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *see also Cutrera v. Board of Sup'rs of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005). Even if the Court were to take the former approach, the protected activity still should not be considered. "In determining whether leave to amend should [be] granted or denied under Rule 15, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failures to cure any deficiencies, (4) undue prejudice, and (5) futility of amendment." *Majestic Synthetic Oil, LLC v. Underwriters at Lloyd's, London*, No. 4:19-cv-03149, 2025 WL 1837519, at *3 (S.D. Tex. July 3, 2025) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998)).

Here, the first option is untenable at this late stage of litigation. The determination of what is and what is not a protected activity materially alters the framing of a retaliation claim because the defense must develop arguments and seek discovery regarding whether such protected activity had any relation to any alleged adverse employment action. As the Fifth Circuit has noted, "[a] defendant is prejudiced if an added claim would require the defendant 'to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court.'" *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)). Thus, it would be unduly prejudicial to allow a plaintiff to assert a new retaliation theory *after* filing a summary judgment motion. Accordingly, no matter which approach the Court takes, the Court cannot consider the request for breaks during the December 28 meeting as protected activity.

The only protected activity that Duggins properly asserts is the accommodation requested following the November 2023 seizure.

*2. Adverse Employment Action*

Second, a retaliation case also requires a showing of an adverse employment action. While much of the discussion under the discrimination section also applies here, the "meaning of 'adverse employment action' evolved differently for retaliation cases than for discrimination cases." *See Liedtke v. City of Austin*, 185 F.4th 560, 585–86 (5th Cir. 2026). For retaliation cases, courts must apply the *Burlington* test: an employment action is adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Crawford*, No. 25-10887, slip op. at *3. *See also Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024).

There are a few possible adverse employment actions: (1) the termination itself, which Duggins claims occurred after the meeting in the back room; (2) the general hostility Duggins faced throughout the meeting; and (3) Higgins's refusal to rescind her resignation. The Court rejects these arguments under the *Burlington* standard for similar reasons articulated under the discrimination analysis.

First, the Court recognizes that if Duggins had full memory of the meeting, she would have most definitely met the *Burlington* standard. But, because Duggins lacks full knowledge on whether she quit, and her theory that she was later fired depends on the premise that she had not previously quit, there is no competent evidence from which a reasonable jury could find that the alleged adverse employment action even occurred.

Second, there is not only zero evidence of hostility from Higgins, but also courts in this circuit have held that a "general allegation of a 'hostile meeting' as an adverse employment action is not actionable." *Brown v. Valvoline*, LLC 2024 WL 2946099, at *6 (S.D. Tex. June

11, 2024); *see also King v. Louisiana*, 294 F. App'x 77 (5th Cir. 2008) ("[T]he Fifth Circuit has held on several occasions that 'criticism, such as [a supervisor's] oral threats or abusive remarks does not rise to the level of an adverse employment action'"); *Sedwick v. McDonough*, No. 3:22-cv-2321, 2024 WL 2690110, at *9 (N.D. Tex. Aug. 22, 2025) (holding that "negative interactions with [bosses] . . . do not constitute adverse employment actions."). Moreover, even if Duggins disliked Higgins throughout the conversation, "a chilly relationship with a supervisor would not dissuade a reasonable worker form making a discrimination complaint." *Gupta v. Qwest Gov't Servs., Inc.*, No. 3:20-cv-3560, 2023 WL 2025056, at *13 (N.D. Tex. Feb. 14, 2023).

And third, for a retaliation claim, the *Porter* doctrine applies: An adverse employment action may occur if, before engaging in protected activity, "a reasonable employee in [the employee's] shoes might have legitimately expected that her rescission of resignation would be accepted." 810 F.3d 940, 947 (5th Cir. 2015); *see also Bennett v. Tarrant Cnty. Coll. Dist.*, No. 3:22-cv-0289, 2023 WL 6628783, at *4 (N.D. Tex. Oct. 10, 2023). While in general, "[j]ust as an at-will employer does not have to hire a given employee, an employer does not have to accept a given employee's rescission. Failing to do so in either case *because* the employee has engaged in a protected activity is nonetheless an adverse employment action." *Porter*, 810 F.3d at 947. Here, Duggins failed to establish with evidence that before she requested accommodations after the November 2023 seizure, a reasonable employee in Duggins's shoes could have legitimately expected that, if she resigned, a later rescission would be accepted. Higgins's refusal to rescind her resignation alone is not sufficient to meet the standard adopted in *Porter*. Thus, the Court finds that there is not an adverse employment action here.

*3. Causation*

Finally, because the Court has ruled out the existence of any properly pled adverse employment actions, there also does not exist a causal relationship between such actions and the November 2023 request for accommodations.

The Court **GRANTS** summary judgment as to Duggins's retaliation claim.

**CONCLUSION**

For the foregoing reasons, the Court **REJECTS** the FCR (ECF No. 51) of the Magistrate Judge following de novo review. It is therefore **ORDERED** that Defendant Factory Connection's Motion for Summary Judgment (ECF No. 33) is **GRANTED** and this case is **DISMISSED with prejudice**.

**SO ORDERED.**

September 30, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE